UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SEMYON GRINBLAT, individually and on
behalf of all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | **CASE NO.: 18-cv-4337** |
| WOODHAVEN LIQUOR CORP. and<br>METRO NY DEALER STATIONS, LLC, | **JURY DEMAND** |
| Defendants. |  |

-----------------------------------------------------------X

## <u>CIVIL COMPLAINT</u>

Michael Grinblat, Esq. (4159752), Law Offices of Michael Grinblat, Attorney for the

Plaintiff, 817 Broadway, Fourth Floor, New York, NY 10003, Tel: (347) 796-0712, Fax: (212)

202-5130, email: michael.grinblatesq@gmail.com.

The plaintiff, Semyon Grinblat, as and for his complaint against the defendants,

respectfully brings before the Court the below allegations.

## <u>STATEMENT OF THE PLAINTIFF'S CLAIMS</u>

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA")

   to enjoin unlawful discrimination based on disability. The plaintiff, SEMYON

   GRINBLAT, was discriminated against on the basis of disability and denied full and equal

   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

   a place of public accommodation owned, leased, or operated by the defendants,

   WOODHAVEN LIQUOR CORP. and METRO NY DEALER STATIONS, LLC.

1

2.  The plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3.  The plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees and costs against the defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of the plaintiff's rights under the ADA.

5.  This Court has supplemental jurisdiction over the plaintiff's allegations arising from the defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because the defendants' property, a public accommodation,

which is the subject of this action, is located in, and does business within, this judicial district.

7. The remedies provided by the New York State Human Rights Law Against Discrimination are not exclusive and state administrative remedies need not be exhausted in connection with suits brought under the Federal Civil Rights Act.

## **PARTIES**

8. The plaintiff, SEMYON GRINBLAT, is, and has been at all times material hereto, a resident of Monmouth County, New Jersey.

9. The plaintiff is disabled and is expressly authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

10. Upon information and belief the defendant, WOODHAVEN LIQUOR CORP., operates, and at all relevant times operated, the liquor store, or a sales establishment, named "Wine & Liquor", which is indicated by the sign displayed on the building, in which the store operates and, at all relevant times, had control over and maintained an adjacent parking lot, which it designed, and/or constructed, and/or painted, and/or placed markings on, and/or altered, and/or operated, for the purpose of providing parking spaces for its customers, and is located at 9005 Myrtle Avenue, Glendale, NY 11385 (hereinafter also referred to as the "Subject Facility"). The defendant is an American for-profit corporation organized under the laws of New York State. Neither the address of its principal executive office, nor the name, nor address, of its chief executive officer are listed on the New York State Department of State's website. The defendant was registered in Queens County, New York,

and is registered to conduct business activities in New York State with the New York State Department of State. Neither its registered agent's name, nor its registered agent's address, are provided on the NYS DOS' website. The NYS Department of State's website shows that the NYS DOS will mail process, if accepted on behalf of the entity, to the following address: Woodhaven Liquor Corp., 9005 Myrtle Avenue, Glendale, NY 11385.

11. The defendant, WOODHAVEN LIQUOR CORP., operates the Subject Facility, which is a store and/or a sales establishment. It is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104(5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-102(9).

12. Upon information and belief the defendant, METRO NY DEALER STATIONS, LLC, at all relevant times was, and currently is, an owner of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building in which it operates. Upon information and belief the company is a landlord and leases its building and land, on which the parking lot of the Subject Facility is located, to the defendant WOODHAVEN LIQUOR CORP. The defendant METRO NY DEALER STATIONS, LLC is a Delaware company, registered in Westchester County, New York. The website maintained by the NYS Department of State shows that there is no registered agent and that the address, to which it will mail process, if accepted on behalf of the entity, is the following: Metro NY Dealer Stations, LLC, 1111B South Governors Avenue, Dover, DE 19904.

13. Either one of the defendants, or both of them, at all relevant times, was an owner, and/or leased, and/or leased to, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or altered a

parking lot adjacent to the store, and/or the sales establishment "Wine & Liquor", which is operated by the defendant WOODHAVEN LIQUOR CORP. Either one of the defendants, or both of them together, simultaneously, or at different times, owned, and/or leased, and/or leased to, and/or designed, and/or constructed, and/or painted, and/or placed markings on, and/or operated, and/or built, and/or maintained, and/or altered that parking lot for the purpose of providing parking spaces for the store's customers. The store, and/or the sales establishment, "Wine & Liquor", and the adjacent parking lot, comprise the Subject Facility and are located at Woodhaven Liquor Corp., 9005 Myrtle Avenue, Glendale, NY 11385.

14. The defendants are jointly and severally liable for the design, construction, maintenance, control, alteration and/or operation of the parking lot adjacent to the store. It is the subject of this lawsuit and, together with the store, "Wine & Liquor", comprise the Subject Facility.

## **CLASS ACTION**

15. The plaintiff brings this suit for declaratory and injunctive relief and as a class action, pursuant to F.R.C.P. 23, on behalf of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

16. The plaintiff, complaining for himself, and all other similarly situated disabled residents in the City and State of New York, hereby alleges the following:

    a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b. There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

    c. The claims or defenses of the representative parties are typical of the claims, or defenses, of the class;

    d. The representative parties will fairly and adequately protect the interests of the class; and

    e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

17. The claims of the plaintiff are typical of those of the class. The class, similarly to the plaintiff, was also not able to have access to the Subject Facility because of the architectural barriers.

18. The plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent the plaintiff in complex class action litigation, and because the plaintiff has no interests antagonistic to the members of the class.

19. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, the defendants removing the architectural barriers without either compensating members of the class, or paying them statutory damages, for discrimination, discomfort, emotional distress, inconvenience and humiliation, which the class members have suffered as a result of the defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

20. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because the defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

21. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

22. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs in the Eastern District of New York.

23. References to the plaintiff shall be deemed to include the named plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

24. On July 26, 1990, United States Congress enacted the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation.

25. Congress made the following findings:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

   d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

   e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

26. Furthermore, Congress also explicitly stated that the ADA had to:

    a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

27. Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

28. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

29. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

30. The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

31. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

32. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 CFR §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

33. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201(a) and (b)

34. The Subject Facility affects interstate commerce within the meaning of the ADA. 42 U.S.C. §12181(7)(E) and 28 CFR §36.104(5)

35. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201.

36. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

37. One type of disability discrimination is an owner's, or an operator's, of the public accommodation failure to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 CFR §36.304

38. If an individual with a disability is dissuaded from entering, or receiving services of a public accommodation because of the existence of an architectural barrier, the landlord and tenant will be guilty of discrimination on the basis of disability.

39. The defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability. 28 CFR §36.304

40. Removal of the architectural barriers was readily achievable by the defendants.

41. The plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Violations of the ADA

42. The plaintiff, who was born in 1949, is an elderly man aged beyond his 69 years. He suffers from the debilitating diseases and was diagnosed with a neurological condition, which affects his walking. His gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. The plaintiff obtained the wheelchair and uses it. The New Jersey Motor Vehicle Commission issued him a parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which the plaintiff is travelling. The plaintiff relies on his wheelchair and is in need to have a car, in which he is driven, parked at a handicapped parking space. He also needs space next to that car, so that he may transfer from the car to the wheelchair. The plaintiff is disabled under the statute, which in pertinent part states that

> *disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 CFR §36.104

43. The plaintiff's adult son visits the plaintiff, manages his care and takes him to places the plaintiff wants to visit, including stores, restaurants, parks, doctors and medical facilities in New Jersey and New York.

44. In June 2018, the plaintiff attempted to enter the defendants' Subject Facility, to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at the defendants' property.

45. The Subject Facility is a store, and/or a sales establishment, also known as Woodhaven Liquor Corp., which is also known as "Wine and Liquor". The Subject Facility sells wine, liquor, vodka, as well as other items. Adjacent to the store is a parking lot, which comprises part of the Subject Facility, as it was provided by the defendants for their customers. They own the store and the parking lot and/or lease, and/or operate it, and/or designed it, and/or painted it, and/or marked it, and/or exercise control over it, and/or maintain it, and/or altered it since 1992. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104(5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-102(9).

46. The plaintiff's son drove to the Subject Facility with the plaintiff and parked his vehicle in one of the parking spaces. There was not a single designated handicapped parking space. The parking space was impermissibly steep. When the plaintiff's son placed the wheelchair next to the car's door, to enable the plaintiff's transfer from the rear of the car to the wheelchair, it rolled.

47. There was no access zone, which made it very difficult for the plaintiff to transfer from the car to the wheelchair, as there was virtually no space for the wheelchair to be placed next to the car's door, as another car was parked in the adjacent parking space. As a result, the plaintiff had to wait for the adjacent car to leave and then almost fell, as he had to transfer to the wheelchair on the steep surface.

13

48. The plaintiff had to ride to the store behind parked cars, as the space in front of the parked cars was too narrow for the plaintiff's wheelchair to pass. To make matters worse, the cars entered and exited the parking spaces, blocking and endangering the plaintiff.

49. The plaintiff's inconveniences continued when he had difficulty paying at the counter for the item he was purchasing. He was not able to extend his knees and toes under the counter, as the space under it was used to display the merchandise offered for sale at the Subject Facility. Furthermore, the counter was too high. He was not able to reach the sales clerk and had to rely on assistance.

50. The plaintiff then had difficulty transferring from the wheelchair back to his son's car, as there was a car parked next to it. He had virtually no space to transfer to the car and almost fell.

51. The store's parking lot was either designed by people, who did not have the plaintiff and his needs, and needs of others similarly situated, in mind, to accommodate him and facilitate his access to the store, or worse, and much more likely, designed with the plaintiff in mind, but not to aid him in his visit to the store, but instead to frustrate his efforts as much as possible through architectural barriers, in order to make him understand and feel the futility of his exertion and that his patronage of the store is neither needed, desired, welcomed, or wanted by the defendants.

52. Frustrated, disappointed and humiliated the plaintiff left the Subject Facility's parking lot.

53. The Subject Facility is located less than two miles away from the cemetery at which the plaintiff's wife, parents and other relatives are buried. He periodically visits the cemetery. Furthermore, the Subject Facility is located along the way from the cemetery to the plaintiff's son's home in Queens, which he visits. The defendants' Subject Facility is

conveniently located and the plaintiff intends to visit it, purchase the products it sells, which are needed by him, and enjoy its services, as soon as the architectural barriers are removed.

54. The plaintiff had difficulties gaining access to the Subject Facility and paying for the merchandise, because of unlawful architectural barriers, and therefore suffered an injury in fact.

55. Since at least June 2018, the defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

56. The plaintiff has difficulties visiting the Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws. The barriers to access the Subject Facility have effectively denied the plaintiff ability to visit the property and have caused emotional distress, embarrassment and frustration to him.

57. Because the Subject Facility is a public accommodation, the defendants are responsible for complying with the ADA. 28 CFR §36.304

58. The numerous architectural barriers to access the Subject Facility have endangered the plaintiff's safety.

59. The defendants' Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304.

60. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised,

enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". 2010 Standards, Overview. These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodations, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodations and commercial facilities, which consist of the Title III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191, appendices B and D.

61. The defendants' Subject Facility is discriminating against the plaintiff, and others similarly situated, by denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

62. "Parking spaces complying with 502 shall be provided in accordance with Table 208.2…" 2010 Standards §208.2. As there are nine parking spaces at the Subject Facility, there must be at least one handicapped parking space, as required by §208.2. 2010 Standards §208.2. The defendants did not design even a single handicapped parking space at the Subject Facility and no handicapped parking space exists at it at all.

63. "For every six or fraction of six parking *spaces* required by 208.2 to comply with 502, at least one shall be a van parking *space* complying with 502." 2010 Standards §208.2.4. The defendants failed to designate a parking space for a van and no such parking space exists in the parking lot of the Subject Facility.

16

64. "Parking *spaces* complying with 502 that serve a particular *building* or *facility* shall be located on the shortest *accessible* route from parking to an *entrance* complying with 206.4." 2010 Standards §208.3.1. The defendants failed to locate any handicapped parking spaces on the shortest accessible route to the entrance of the store. There are no handicapped parking spaces at all at the Subject Facility and, therefore, there is no accessible route.

65. "Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3." 2010 Standards §502.2. Not only was not a single handicapped parking space provided, for a van, or otherwise, but no parking space at the lot satisfies even the minimum width requirements for a van space. All parking spaces are narrower than 132 inches. There is also no access aisle.

66. "Access aisles serving parking *spaces* shall comply with 502.3. Access aisles shall adjoin an *accessible* route. Two parking *spaces* shall be permitted to share a common access aisle." 2010 Standards §502.3. Neither an access aisle, nor an accessible route, are present at the defendants' parking lot.

67. "Accessible routes must connect parking spaces to accessible entrances. In parking facilities where the accessible route must cross vehicular traffic lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids. Where possible, it is preferable that the accessible route not pass behind parked vehicles." Advisory 2010 Standards §502.3. On the defendants' parking lot, the path between the parking spaces and the store's wall was no wider than 20 inches, too narrow for the plaintiff's wheelchair to pass through. Consequently, the plaintiff had to ride in his

wheelchair behind the parked vehicles. Although it was possible to design the parking lot to make it compliant with the ADA, the defendants chose to not do so. There were also no marked crossings. As a result, the plaintiff was not able to ride safely from the car to the store's entrance.

68. "Access aisles serving car and van parking *spaces* shall be 60 inches (1525 mm) wide minimum." 2010 Standards §502.3.1. The defendants failed to design an access aisle. No such aisle is present in the defendants' Subject Facility's parking lot.

69. "Access aisles shall extend the full length of the parking spaces they serve." 2010 Standards §502.3.2. There is no access aisle in the defendants' parking lot.

70. "Access aisles shall be marked so as to discourage parking in them." 2010 Standards §502.3.3. The defendants failed to comply with the law and did not mark any area as an access aisle. Consequently, the plaintiff did not have space to exit the vehicle.

71. "Access aisles shall not overlap the vehicular way. Access aisles shall be permitted to be placed on either side of the parking space except for angled van parking spaces which shall have access aisles located on the passenger side of the parking spaces." 2010 Standards §502.3.4. There is no access aisle in the defendants' parking lot.

72. "Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. EXCEPTION: Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4. Thus, the maximum permissible slope must not be steeper than 2.08%. The defendants violated that rule, as they failed to designate any parking spaces as handicapped parking spaces at the Subject Facility. They also failed to designate an access aisle. Furthermore,

the slope of the parking space, in which the car, used by the plaintiff, was parked, had an impermissibly steep slope of 1:17, which is an equivalent of 5.75%.

73. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage." 2010 Standards §Advisory 502.4. Not a single access aisle was present at the Subject Facility. Furthermore, the surface next to the parking space, in which the plaintiff's son's car was parked, was too steep. As a result, it was extraordinarily difficult for the plaintiff to transfer from the vehicle to the wheelchair and the other way around.

74. "Parking space identification signs shall include the International Symbol of Accessibility complying with 703.7.2.1. Signs identifying van parking spaces shall contain the designation 'van accessible.' Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6. The defendants disregarded the regulation completely and failed to install the required van identification sign, or any sign, designating a handicapped parking space, in their parking lot. They were absent together with any symbols of accessibility for handicapped persons.

75. "Parking spaces and access aisles shall be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes." 2010 Standards §502.7. Such an adjacent accessible route was never designed by the defendants. Neither did they design any handicapped parking spaces, or access aisles, at the Subject Facility. There was no safe way for the plaintiff to ride in his wheelchair from the parked vehicle to the store's entrance. He was neither able to ride in front of the store, in the space between the front of the cars and the store's wall, because the area was too narrow for his

wheelchair, nor was there a safe route behind the parked cars, as they came and went, blocking his path and endangering his life.

76. "Wheel stops are an effective way to prevent vehicle overhangs from reducing the clear width of accessible routes." 2010 Standards § Advisory 502.7. The defendants did not install wheel stops. The impermissibly narrow walkway was impassable for the plaintiff in his wheelchair.

77. "Passenger loading zones shall provide a vehicular pull-up space 96 inches (2440 mm) wide minimum and 20 feet (6100 mm) long minimum." 2010 Standards §503.2. The defendants failed to designate any area of the parking lot as a passenger loading zone. It did not exist.

78. "Passenger loading zones shall provide access aisles complying with 503 adjacent to the vehicle pull-up space. Access aisles shall adjoin an accessible route and shall not overlap the vehicular way." 2010 Standards §503.3. The defendants failed to provide an access aisle, a vehicle pull-up space, an accessible route and a loading zone.

79. "Access aisles serving vehicle pull-up spaces shall be 60 inches (1525 mm) wide minimum." 2010 Standards §503.3.1. The defendants failed to designate any area of the parking lot as an access aisle.

80. "Access aisles shall extend the full length of the vehicle pull-up spaces they serve." 2010 Standards §503.3.2. No access aisles existed at the defendants' parking lot.

81. "Access aisles shall be marked so as to discourage parking in them." 2010 Standards §503.3.3. There were no access aisles.

82. "Vehicle pull-up spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the vehicle pull-up space they serve. Changes in level

are not permitted." 2010 Standards §503.4. Once again, there was not a single access aisle in the defendants' parking lot. There was also not a single vehicle pull-up space at the Subject Facility.

83. "Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches (915 mm) minimum. EXCEPTION: The clear width shall be permitted to be reduced to 32 inches (815 mm) minimum for a length of 24 inches (610 mm) maximum provided that reduced width segments are separated by segments that are 48 inches (1220 mm) long minimum and 36 inches (915 mm) wide minimum." 2010 Standards §403.5.1. The clear width in front of the parked cars in front of the store did not exceed 20 inches at the time the plaintiff attempted to ride to the store's entrance from the vehicle, because the parked cars were too close to the wall, as the defendants failed to install wheel stops.

84. "Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1. The ground at the Subject Facility's parking lot was impermissibly steep.

85. "A portion of the counter surface that is 30 inches (760 mm) long minimum and 36 inches (915 mm) high maximum shall be provided. Knee and toe space complying with 306 shall be provided under the counter. A clear floor or ground space complying with 305 shall be positioned for a forward approach to the counter." 2010 Standards §904.4.2. The defendants violated that rule. Knee and toe spaces were not provided under the counter, which was used to display merchandise. As a result, the plaintiff was not able to extend his feet under it in order to reach the cashier. Furthermore, the counter was higher than approximately 45 inches. Its height also prevented the plaintiff from reaching the sales clerk and he had to rely on assistance when he was making the purchase.

86. The individual plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. In order to remedy this discriminatory situation, the plaintiff requires an inspection of the defendant's Subject Facility in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

87. The defendants have failed to remove architectural barriers to accessibility to the Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

88. Upon information and belief, since 1992 the defendants' Subject Facility has undergone alterations to the areas, which affect, or could affect, access to or usability of, its place of public accommodation.

89. The Subject Facility has not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

90. The defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

91. To date the architectural barriers, the removal of which was readily achievable, and other violations of the ADA, still exist at the Subject Facility and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

92. Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, the defendants were required to make the Subject Facility accessible to persons with disabilities, and should have removed architectural barriers by January 26, 1992. To date, the defendants have failed to comply with that mandate.

93. The defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

94. It was not structurally impracticable for the defendants to make the Subject Facility accessible.

95. Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by the defendants.

96. The defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

97. Accommodations to the plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facility by the defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

98. The plaintiff has a realistic, credible, existing and continuing threat of discrimination from the defendants' non-compliance with the ADA in connection with the Subject Facility.

99. The defendants' failure to make its Subject Facility accessible denied the plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

100.    The effect of the practices complained of has been to deprive the plaintiff, and all others similarly situated, the full and equal enjoyment of the Subject Facility and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained and/or operated by the defendants.

101.    The defendants' Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

102.    Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant the plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, the plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

103.    The defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable. Allowing the defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against the plaintiff, and others similarly situated individuals.

104.    The inexcusability of the defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination,

but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred the plaintiff's access, inconvenienced and embarrassed him, humiliated him and caused emotional distress to him, and others similarly situated, the defendants gave a crystal-clear message to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

105.    The plaintiff re-alleges, and incorporates, by this reference, all allegations set forth in this complaint as if fully set forth herein.

106.    The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

107.    The defendants' Subject Facility is a place of public accommodation as defined in New York State Human Rights Law §292(9).

108.    The defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

109.     The defendants are in violation of the New York State Human Rights Law by denying the plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facility.

110.     The defendants do not provide the plaintiff, and others similarly situated, with equal opportunity to use their public accommodation.

111.     The defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

112.     As a direct and proximate result of the defendants' unlawful discrimination, which is in violation of the Executive Law, the plaintiff has suffered, and continues to suffer, emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

113.     The defendants have not provided the plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

114.     The defendants' direct, or indirect, unequal treatment of the plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

115.     The defendants have, because of the plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodation.

116.     The defendants have demonstrated that the patronage, or custom, of the plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

117.     Pursuant to the New York State Human Rights Laws, the defendants, and their agents, discriminated against the plaintiff.

26

118.    As a direct and proximate result of the defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, the plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, insomnia, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

119.    The plaintiff requests compensatory damages in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

120.    The plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

121.    The defendants have violated the plaintiff's civil rights on the basis of his disability.

122.    Consequently, the plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from *each defendant*.

123.    Pursuant to the New York Civil Rights law, §40-d, the defendants are guilty of a class A misdemeanor.

124.    Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Laws

125.      The plaintiff re-alleges, and incorporates by this reference, all the allegations set

forth in this complaint, as if fully set forth herein.

126.      The New York City Human Rights Law, in a relevant part, provides the below.

> it shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>> 1. Because of any person's actual or perceived … disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;

NYC Admin. Code §8-107(4)

127.      The defendants have not reasonably accommodated the plaintiff, and other disabled

individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17),

(18), §8-107(4) and §8-107(15).

128.      In violation of the New York City Administrative Code, the defendants have

unlawfully discriminated against the plaintiff and all others similarly situated.

129.      Reasonable accommodations and modifications are necessary to enable the

plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use

of the defendants' Subject Facility.

130.      In violation of the New York City Administrative Code the owner, operator, lessee,

proprietor, manager, agent and/or employees of the defendants' Subject Facility have,

because of the actual, or perceived, disability of the plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

131.    In violation of the New York City Administrative Code, on the basis of the plaintiff's disability, the defendants have demonstrated that the patronage, or custom, of the plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

132.    The defendants are in violation of the New York City Human Rights Law by denying the plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facility.

133.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

134.    As a direct and proximate result of the defendants' disability discrimination, in violation of the New York City Human Rights Laws, the plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, insomnia, loss of self-esteem and self-confidence, emotional pain and suffering.

135.    The plaintiff requests compensatory damages in the amount of $1,000 under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

136.     The plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. The plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by the defendants, pursuant to the ADA, 28 CFR §36.505 and New York Executive Law §297. Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)

## MONETARY DAMAGE

137.     The plaintiff requests compensatory damages in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he

> New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

138.     The plaintiff requests statutory monetary damages in the sum of $500 from *each defendant* to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered… .

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

139.     The reason the plaintiff requests $500 from each defendant, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here and it is likely that they will be revealed upon inspection of the Subject Facility by an expert, whom the plaintiff intends to hire.

**INJUNCTIVE RELIEF**

140.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant the plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facility until the requisite modifications are completed.

141.    The plaintiff requests the Court to issue a permanent injunction enjoining the defendants from disability discrimination.

142.    The plaintiff requests the Court to issue a permanent injunction and order the defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, the plaintiff requests the Court to adapt relief ordered in <u>Shariff v. Alsaydi</u>, 2013 WL 4432218. The plaintiff requests the Court to order the defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide the plaintiff's counsel with those plans for review within 60 days of the Court's order. The plaintiff also requests that the injunction provide him with 30 days to file a motion seeking relief should the defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. The plaintiff further requests that the injunction requires the defendants to implement the architectural plans and remedy the violations within 60 days of either the plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

143.    The plaintiff requests the Court to issue a permanent injunction requiring the defendants to make all necessary modifications to the defendants' policies, practices and

procedures, so that the plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

144.    Injunctive relief is also necessary to order the defendants to provide auxiliary aid, or service, and/or alternative methods, to allow the plaintiff, and others similarly situated, to use the place of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.


## DECLARATORY RELIEF

145.    The plaintiff is entitled to a declaratory judgment concerning the violations of the ADA, the New York State and the New York City laws committed by the defendants specifying the rights of the plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from the defendants' Subject Facilities by the defendants and as to their policies, practices, procedures, facilities, goods and services.


## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff hereby respectfully requests judgment against the defendants and that this Court grants the following relief:

A.    Certifies this case as a class action;

B.    Grants a permanent injunction

    i.)  Enjoining the defendants, its officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

ii.) Requiring the defendants to alter their Subject Facility to make it readily accessible to, and usable for, individuals with disabilities;

iii.) Compelling the defendants to make all necessary modifications to their policies, practices and procedures, so that the plaintiff would not be subject to further discrimination;

iv.) Ordering the defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that the plaintiff would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by the defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws; and

v.) Ordering the defendants to make the Subject Facility readily accessible to and usable by individuals with disabilities.

C.    Enters declaratory judgment specifying the defendants' violations of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Right Laws and declares the rights of the plaintiff, and other persons similarly situated, as to the defendants' policies, procedures, facilities, goods and services offered to the public;

D.    Enters declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by the defendants violates the ADA, the New York State Civil Rights Law, the New York State Human Rights Law and the New York City Human Rights Law;

34

E.      Enters an order requiring the defendants to alter their facilities and amenities to make them accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws;

F.      Holds the defendants liable for compensatory damages in the amount of $1,000 under the New York State Human Rights Law and the New York City Human Rights Law.

G.      Holds *each of the defendants* liable for $500 in statutory monetary damages for each violation and awards that sum to the plaintiff pursuant to New York State Civil Rights Laws §40-c and §40-d;

H.      Finds the defendants guilty of class A misdemeanor pursuant to New York State Civil Rights Law §40-d;

I.      Retains its jurisdiction over the defendants until their unlawful practices, acts and omissions no longer exist;

J.      Finds that the plaintiff is a prevailing party in this litigation and awards reasonable attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which the plaintiff, and other persons similarly situated, may be entitled; and

K.      Awards such other and further relief as it deems necessary, just and proper.

### JURY DEMANDED

The plaintiff demands a trial by jury of all the issues of fact and damages.


Dated: July 31, 2018

*Michael Grinblat*
Michael Grinblat, Esq. (4159752)


Attorney for the Plaintiff
Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com